UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
RUSH MASONRY INC. and RANDALL RUSH,
Plaintiffs,

\_\_\_\_\_ Civ. _____ (        )

-against-

**Complaint**

DYNASTY CAPITAL 26 LLC, FUNDING EXPERTS INC,
LINCOLN FUNDING SOLUTIONS LTD, WOODMERE
CAPITAL LLC, ACE RECOVERY GROUP LLC,
LEXINGTON RECOVERY LLC, TRITON RECOVERY LLC,
JOHN DOE 1-10, JANE DOE 1-10, CORPORATION XYZ 1-10
Defendants.
-------------------------------------------------------------X

RUSH MASONRY INC ("Rush Masonry") and RANDALL RUSH ("Rush") (collectively

"Plaintiffs") by and through their undersigned attorney Robert C. Jacovetti, Esq. as and for its

complaint against DYNASTY CAPITAL 26 LLC ("DYNASTY"), FUNDING EXPERTS INC

("FUNDING EXPERTS"), LINCOLN FUNDING SOLUTIONS LTD ("LINCOLN"),

WOODMERE CAPITAL LLC ("WOODMERE"), ACE RECOVERY GROUP LLC ("ACE'),

LEXINGTON RECOVERY LLC ("LEXINGTON"), TRITON RECOVERY LLC ("TRITON"),

JOHN DOE 1-10, JANE DOE 1-10, and CORPORATION XYZ 1-10, (collectively "Defendants")

allege on knowledge as to their own status and actions and otherwise upon information and belief,

as follows:

## PRELIMINARY STATEMENT

1.    Defendants are participants in the thirty-five billion dollar niche merchant cash advance

("MCA") industry still in its infancy, or as Sean Murray, founder of *deBanked* stated in an

interview, still in "…early days right now…." A copy of the interview published by Excel

Capital Management in 2016 is attached as Pltf. Exhibit "1."

2.    MCA creditors market unconscionably high interest loans to small businesses in the form

of purchase and sale agreements for future revenue throughout the United States, using a

vast network of Independent Sales Organizations and MCA syndication platforms and software. Copies of the American Arbitration Associate Final Award document number 2, index number 652801/202, Pearl Capital Business Funding LLC v. Steven Berkovitch et al. at p. 6 and of a Google search is attached as Pltf. Exhibit "2."

3.      To date, the MCA industry operates virtually unregulated.

4.      Defendants transacted with Plaintiffs disguising their unlawful loans as purchase and sale agreements in an effort to circumvent New York and Florida usury laws for the purpose of increasing their profits.

5.      Defendants' loans are primarily secured by Rush Masonry's accounts and, in their efforts to collect from the account debtors (i.e., the persons obligated to Rush Masonry on the accounts), willfully and intentionally fail to comply with New York's Uniform Commercial Code ("UCC") Article 9 (which requires that collection be made in a commercially reasonable and good-faith manner) by contemporaneously sending competing lien notifications to the account debtors, foreseeably causing them to cease all payments, halting Rush Masonry's revenue stream and further delaying the payment of Rush Masonry's obligations to Defendants, thereby adding more interest to an already unconscionable and usurious interest rate, all for the purpose of increasing their profits in furtherance of their money-making scheme.

6.      Furthermore, Defendants demanded that account debtors pay the full amount of the account totaling $1,566,961.39 (Rush Masonry's total obligation to Plaintiffs), whether or not that amount was due to be paid as of the date of the notification.

7.      To the extent the notifications demanded payment of amount not yet due, they are ineffective as a matter of law and serve only to heighten the confusion of the account

debtors and make them even more likely to refuse to pay anyone pending further clarification or in most cases resolution of the dispute.

8.      To date Defentants are restraining Plaintiffs' accounts in excess of $3,931,801.35.

## THE PARTIES, JURISDICTION AND VENUE

9.      Plaintiff Rush Masonry is a corporation organized within the State of Louisiana with its principle place of business located at 670 Saint George Avenue, Jefferson, LA 70121.

10.     Plaintiff Rush is an individual domiciled and permanently residing within the State of Louisiana.

11.     Defendant Dynasty is at all times relevant a limited liability company organized within the State of New York with its principle place of business located at 96-14 Metropolitan Avenue, Forest Hills, New York 11375 engaged in MCA lending to small businesses throughout The United States.

12.     Defendant Funding Experts is at all times relevant a corporation organized within the State of New York with its principle place of business located at 2248 Broadway, #1897, New York, New York 10024 engaged in MCA lending to small businesses throughout The United States.

13.     Defendant Lincoln is at all times relevant a limited company organized within the State of Delaware with its principle place of business located at 16192 Coastal Hwy, Lewes Delaware 19958 engaged in MCA lending to small businesses throughout The United States.

14.     Defendant Woodmere is at all times relevant a limited liability company organized within the State of New York with its principle place of business located at 16 Empire Blvd.,

Nanuet, New York 10954 engaged in MCA lending to small businesses throughout The United States.

15.     Defendant Ace is at all times relevant a limited liability company organized within the State of New York with its principle place of business located at 99 Wall Street, #4890, New York, New York 10005 engaged in third party debt collections and MCA lending to small businesses throughout The United States.

16.     Defendant Lexington is at all times relevant a limited liability company organized within the State of New York with its principle place of business located at 222 West 37th Street, 9th Floor, New York, New York 10018 engaged in third party debt collections and MCA lending to small businesses throughout The United States.

17.     Defendant Triton is at all times relevant a limited liability company organized within the State of Florida with its principle place of business located at 3111 North University Drive, Ste. 604, Coral Springs, Florida 33065 engaged in third party collections and MCA lending to small businesses throughout The United States.

18.     Judisdiction and venue are properly placed within The United States District Court, Southern District of New York based on diversity of citizenship and federal question.

## STATEMENT OF FACTS

**MCA Agreements And Security Provisions**

19.     On or around February 7, 2024 Plaintiffs executed a Sale Of Future Receipts Agreement with Defendant Dynasty that incorporates a security provision.  Attached as Pltf. Exhibit "3" at para. 14.

4

20.     On or around April 11, 2024 and again on or around April 15, 2024, Plaintiffs executed a
        a Standard Merchant Cash Advance Agreement with Defendant Funding Experts Inc. that
        incorporates a security provision. Attached as Pltf. Exhibit "4" at page 10 respectively.

21.     On January 26, 2024 Lincoln Funding Solutions Ltd. filed UCC Financing Statement in
        Jefferson, Louisiana document number 26-433499 and filed UCC Financing Statement
        Amendment in Jefferson, Louisiana document number 26-435636 on April 29, 2024
        naming Funding Experts as a secured party of record. See Pltf. "4."

22.     On or around March 6, 2024 Plaintiffs executed a Receivable Purchase Agreement with
        Defendant Woodmere that incorporates a security provision. Attached as Pltf. Exhibit "5"
        at page 9.

**Judicial Procedure**

23.     On May 6, 2024 Defendant Dynasty filed a summons and complaint in The Supreme Court
        of the State of New York, County of Monroe, index number E2024007533. Attached as
        Pltf. Exhibit "6."

24.     On May 29, 2024 Plaintiffs as defendants filed an answer in the above referenced action
        by Defendant Dynasty and the clerk of the court granted judgment by default May 30,
        2024. See Pltf. Exhibit "6."

25.     On May 6, 2024 Defendant Woodmere filed a summons and complaint in The Supreme
        Court of the State of New York, County of Monroe, index number E2024007555. Attached
        as Pltf. Exhibit "7."

26.     On May 29, 2024 Plaintiffs as defendants file an answer in the above referenced action by
        Defendant Woodmere and an amended answer June 18, 2024. See Pltf. Exhibit "7."

27.  On May 15, 2024 Defendant Funding Experts filed a summons in The Circuit Court of the 11th Judicial Circuit In And For Miami-Dade County, Florida case number 2024-008317 CA 01. Attached as Pltf. Exhibit "8."

28.  On June 27, 2024 Plaintiffs as defendants filed an answer in the above referenced Florida action. See Pltf. Exhibit "8."

**Collection Procedure**

29.  On April 9, 2024 Defendant Ace, on behalf of Defendant Dynasty, sent a UCC Lien Notice And Notice of Power Of Attorney to Rush Masonry's account debtor Woodward Design+Build demanding full and immediate payment of the entire balance of the account in the amount of $290,778.50. Attached as Pltf. Exhibit "9."

30.  On May 3, 2024 Defendant Triton, on behalf of Defendant Funding Experts, sent a UCC Lien Notice And Notice Of Power Of Attorney to Rush Masonry's account debtors, including Broadmoor LLC, Norsouth Construction, Lamar Contractors Inc, Gibbs Construction LLC, Woodward Design+Build, demanding full and immediate payment of the entire balance of the accounts in the amount of $859,786.90. See Pltf. Exhibit "9."

31.  On May 3, 2024 Defendant Lexington, on behalf of Defendant Woodmere, send a UCC Lien Notice to Rush Masonry's account debtor NorSouth Construction demanding full and immediate payment of the entire balance of the account in the amount of $416,395.99. See Pltf. Exhibit "9."

32.  Defendants Dynasty, Funding Experts, and Woodmere are secured parties with perfected security interests in Rush Masonry's accounts which, as described in detail below, have a value far in excess of the $1,566,961.39 demanded from the account debtors.

**Account Debtors' Responses and Actions**

33.    Account debtor NorSouth Construction, in response to the lien notifications it received
       from Defendants Lexington and Triton, responded via letter dated May 8, 2024 to Rush
       Masonry and to Defendants Lexington and Triton informing all that while no payment was
       due to Plaintiffs, if and when any payment became due NorSouth would issue checks
       payable to Rush Masonry Inc AND Lexington Recovery LLC f/b/o Woodmere Capital
       LLC AND Triton Recovery LLC f/b/o Funding Experts Inc. Attached as Pltf. Exhibit "10."

34.    Account debtor Broadmoor, in response to the lien notification it received from Defendant
       Triton, informed Plaintiffs via letter dated May 10, 2024 that it would withhold payments
       until the issue is resolved. See Pltf. Exhibit "10."

35.    Defendants restrained accounts in an amount ($3,931,801.35, as demonstrated by the
       attached Accounts Receivable Aging Report) that far exceeds Rush Masonry's aggregated
       obligation ($1,566,961.39), and so Defendants are substantially "over-collateralized."
       Attached as Pltf. Exhibit "11."

36.    Defendants are virtually certain to collect the debts owed to them, plus all interest and
       expenses accruing, relying upon judicial procedure and compliant collection procedure
       which they are entitled to do under Article 9.

37.    However, by delaying, interrupting and halting payments owed to Plaintiffs relying upon
       the use of contemporaneous and competing lien notifications, Defendants failed to proceed
       in accordance with Article 9, violating both the article's commercially reasonableness
       requirement and good faith requirements.

38.    The manner in which loans secured by accounts are stacked within the MCA industry
       virtually assures that a default to one creditor will have a cascading effect and result in

multiple defaults and contemporaneous and competing lien notifications foreseeably leave the account debtors confused as to whom they should pay since Article 9 does not contain rules to guide them in this situation, and thus their natural reaction is to cease all payments.

39.     This result is entirely foreseeable by Defendants and a product of their industry practice recognizing they incur no risk from the delay and in fact profit from it because their over-collateralization virtually guarantees that they will collect their expenses and post default interest.

40.     Defendants failed to comply with UCC Article 9 (Section 9-607(c)) by collecting from the account debtors in a commercially unreasonable manner.

41.     Defendants also failed to collect from the account debtors in good faith, as required by UCC Article 1 (Section 1-304), incorporated into Article 9 (Section 9-102(c)).

42.     Defendants' contemporaneous and competing lien notifications to the account debtors foreseeably interrupted Rush Masonry's' revenue stream, further delaying payments by Rush Masonry to Defendants, all for the purpose of increasing their profits.

43.     Rush Masonry's business operations were interrupted and are now halted and cannot resume unless and until its revenue (restrained accounts) are released.

44.     Plaintiffs suffered damages resulting from Defendants actions, including but not limited to the loss of revenue, projects, contracts, and business/client relationships.  See Aff't of Randall Rush.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Violation of N.Y. UCC Section 9-607(c)'s Commercially Reasonable Requirement)

45.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 44 of this complaint as though fully set forth at length herein.

46.  Defendants have the burden to establish that each aspect of their collection procedures, described above, was conducted in accordance with UCC Article 9. *N.Y. UCC Section 9-626(a)(2)*.

47.  The halting of payments by Rush Masonry's account debtors is the result of industry practices engaged in by MCA creditors, and employed by Defendants herein, because they incur no risk from the delay and in fact profit from it because their over-collateralization virtually guarantees that they will collect their expenses and post-default interest.

48.  Defendants executed lending agreements with Rush Masonry incorporating provisions that grant Defendants security interest in Rush Masonry's accounts as set forth above. See Pltf. "3-5."

49.  Defendants willfully sent contemporaneous and competing lien notifications to Rush Masonry's account debtors demanding $1,566,961.39, foreseeably halting all payments by the account debtors and thereby delaying payments that reduce the secured obligations for the purpose of increasing Defendants' profits in furtherance of their money-making scheme. See Pltf. "9."

50.  In response to the contemporaneous and competing lien notifications, Rush Masonry's account debtors stopped all payments to Rush Masonry in an amount not less than $3,931,801.35. See Pltf. "10" and "11."

51.  Rush Masonry's business operations were interrupted and are now halted and cannot resume unless and until its revenue (restrained accounts) are released.

52.  Defendants actions as set forth above violate the commercially reasonable requirement of N.Y. UCC Article 9.

53.   Plaintiffs suffered damages resulting from Defendants actions including but not limited to, the loss of revenue, projects, contracts, and business/client relationships.  See Aff't of Randall Rush.

54.   Defendants are liable to Plaintiffs for damages in an amount to be determined at trial for the loss caused by their failure to comply with the commercially reasonable requirement of UCC Article 9. *N.Y. UCC 9-625(b)*.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Violation of N.Y. UCC Article 1 Section 1-304 and Article 9 Section 9-102(a)(43))**

55.   Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 35 through 54 of this complaint as though fully set forth at length herein.

56.   Pursuant to N.Y.UCC Article 9-102(c), the general definitions and principles of construction and interpretation of Article 1 are incorporated throughout Article 9.

57.   Defendants have the burden to establish that each aspect of their collection procedures, described above, was conducted in accordance with UCC Article 9. *N.Y. UCC Section 9-626(a)(2)*.

58.   The halting of payments by Rush Masonry's account debtors is the result of industry practices engaged in by MCA creditors, and employed by Defendants herein, because they incur no risk from the delay and in fact profit from it because their substantial over-collateralization virtually guarantees that they will collect their expenses and post-default interest.

59.   Defendants executed lending agreements with Rush Masonry incorporating provisions that grant Defendants security interest in Rush Masonry's accounts as set forth above. See Pltf. "3-5."

60.     Defendants willfully sent contemporaneous and competing lien notifications to Rush Masonry's account debtors demanding $1,566,961.39, foreseeably halting all payments by the account debtors and thereby delaying payments that reduce the secured obligations for the purpose of increasing Defendants' profits in furtherance of their money-making scheme.  See Pltf. "9."

61.     In response to the contemporaneous and competing lien notifications, Rush Masonry's account debtors stopped all payments to Rush Masonry in an amount not less than $3,931,801.35.  See Pltf. "10" and "11."

62.     Rush Masonry's business operations were interrupted and are now halted and cannot resume unless and until its revenue (restrained accounts) are released.

63.     Defendants had an obligation to act in good faith in enforcing their contracts with Rush Masonry and as described above did not act in good faith when Defendants failed to observe commercially reaonsable standards of fair dealing.  N.Y. UCC 1-304 (imposing duty), 9-102(a)(43) (defining good faith).

64.     Defendants actions as set forth above violate the good faith requirements of N.Y. UCC Article 9.

65.     Plaintiffs suffered damages resulting from Defendants actions including but not limited to, the loss of revenue projects, contracts, and business/client relationships.  Aff't of Randall Rush.

66.     Defendants are liable to Plaintiffs for damages in an amount to be determined at trial for the loss caused by their failure to comply with UCC Article 9.  N.Y. UCC 9-625(b).

## AS AND FOR A THIRD CAUSE OF ACTION
### (Conspiracy Under 18 U.S.C. Section 1962(d))

67.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 66 of this complaint as though fully set forth at length herein.

68.     The halting of payments by Rush Masonry's account debtors is the result of industry practices engaged in by MCA creditors, and employed by Defendants herein, because they incur no risk from the delay and in fact profit from it because their substantial over-collateralization virtually guarantees that they will collect their expenses and post-default interest.

69.     Defendants willfully sent contemporaneous and competing lien notifications to Rush Masonry's account debtors demanding $1,566,961.39, foreseeably halting all payments by the account debtors and thereby delaying payments reducing the secured obligations for the purpose of increasing Defendants' profits in furtherance of their money-making scheme. See Pltf. "9."

70.     Rush Masonry's account debtors stopped all payments to Rush Masonry in an amount not less than exceeds $3,931,801.35. See Pltf. "10" and "11."

71.     Rush Masonry's business operations were interrupted and are now halted and cannot resume unless and until its revenue (restrained accounts) are released.

72.     Defendants willfully combined, conspired, and confederated to collect upon unlawful debt in violation of 18 U.S.C. § 1962(a)(b)(c) and (d).

73.   Plaintiffs suffered damages resulting from Defendants actions including but not limited to, the loss of revenue, projects, contracts, and business/client relationships.  Aff't of Randall Rush.

74.   Defendants are liable to Plaintiffs for damages in an amount to be determined at trial when Defendants engaged in a pattern of racketeering and conspired to collect unlawful debt in violatin of 18 U.S.C. § 1962(a)(b)(c) and (d).

### PLAINTIFFS DEMAND FOR JURY TRIAL

75.   Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 74 of this complaint as though fully set forth at length herein.

76.   Plaintiffs hereby demand a trial by jury in this action

### RESERVATION OF RIGHT TO AMEND PLEADINGS

77.   Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 76 of this complaint as though fully set forth at length herein.

78.   Plaintiffs reserve the right to amend these pleadings.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request judgment against Defendants as follows:

(i)   on the first cause of action of this complaint, Plaintiffs request judgment against Defendants for damages, including compensatory, consequential, direct and punitive, in an amount to be determined at trial plus attorney fees, prejudgment interest, costs and disbursements;

(ii)   on the second cause of action of this complaint, Plaintiffs request judgment against Defendants for damages, including compensatory, consequential, direct and punitive, in an amount to be determined at trial plus attorney fees, prejudgment interest, costs and disbursement.

(iii)    on the third cause of action of this complaint, Plaintiffs request judgment against

Defendants for damages, including compensatory, consequential, direct and punitive, in an amount

to be determined at trial plus attorney fees, prejudgment interest, costs and disbursement.

(iv)    for such other and further relief as this Court deems just and proper.

Dated: August 27, 2024
Garden City, New York                Respectfully,

Robert C. Jacovetti, Esq.
Jacovetti Law, P.C.
*Attorney for Plaintiffs*
100 Garden City Plaza, Ste. 227
Garden City, New York 11530