UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RUSH MASONRY INC. and RANDALL RUSH,          Case No.: 1:24-cv-06520-CM

                    Plaintiffs,

   -against-

DYNASTY CAPITAL 26 LLC, FUNDING
EXPERTS INC, LINCOLN FUNDING
SOLUTIONS LTD, WOODMERE CAPITAL
LLC, ACE RECOVERY GROUP LLC,
LEXINGTON RECOVERY LLC, TRITON
RECOVERY LLC, JOHN DOE 1-10, JANE DOE
1-10, CORPORATION XYZ 1-10

                  Defendants.

---

**DEFENDANTS DYNASTY CAPITAL 26 LLC AND ACE RECOVERY GROUP'S
MEMORANDUM OF LAW IN OPPOSITION OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCITON**

WELLS LAW P.C.
Steven W. Wells
Will Parsons
229 Warner Road
Lancaster, New York 14086
Tel.: (716) 983-4750
Email: steve@wellspc.com
Email: will@wellspc.com

*Counsel for Defendants Dynasty Capital 26 LLC
and Ace Recovery Group LLC*

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………….……iv

PRELIMINARY STATEMENT………………………………………………………1

FACTUAL AND PROCEDURAL BACKGROUND…………………………………....3

    I.     The Purchase Agreement……………………………………….……...……3

    II.    Plaintiffs' Breach of the Purchase Agreement and Guaranty……………..……5

    III.   The UCC Lien Notices……………………………………………………6

    IV.   The State Court Action…………………………………………...…………7

    V.    Plaintiff's Complaint…………………………………...……………7

    VI.   Plaintiff's Motion for Preliminary Injunction……………………………………8

LEGAL STANDARD……………………………………………...……………8

LEGAL ARGUMENT……………………………………………...………….....8

    I.     Plaintiffs Are Barred From Bringing Their Claims Against Defendants…………8

        A.   Plaintiffs Have Released all Claims Arising Out of the
            Purchase Agreement……………………………………...……8

        B.   Plaintiffs' Claims Are Barred by Res Judicata…………………...…9

    II.    Plaintiffs Haven't Satisfied the Necessary Requirements to Obtain a
        Preliminary Injunction…………………………………………………...10

        A.   Plaintiffs Haven't Established That They Will Suffer Irreparable
            Harm if the Preliminary Injunction is Not Granted………………………10

        B.   Plaintiffs Haven't Established a Likelihood of Success on Their
            Causes of Action and Haven't Raised Sufficiently
            Meritorious Questions…………………………………………...…12

            1.   Plaintiffs Have No Likelihood of Success on Their First
                Cause of Action for Violation of N.Y. UCC Section 9-607(c)'s
                Commercially Reasonable Requirement…………………………12

2.      Plaintiffs Have No Likelihood of Success on Their Second
        Cause of Action for Violation of N.Y. UCC Section 1-304
        and Article 9 Section 9-102(a)(43)……………………………...……15

3.      Plaintiffs Have No Likelihood of Success on Their Third
        Cause of Action for RICO Conspiracy………………………….…..16

        a.      Plaintiffs Haven't Alleged the Existence of a RICO
                Enterprise or a RICO Persons……………………...……16

        b.      Plaintiffs Haven't Alleged a Pattern of
                Racketeering Activity…………………………...…………17

        c.      Plaintiffs Haven't Alleged Collection of Unlawful Debt..17

                i.      The Purchase Agreement Isn't a Loan Subject to
                        Usury Laws…………………………………...……18

                ii.     Plaintiffs Haven't Alleged that the Purchase
                        Agreement Carries Twice the Enforceable
                        Interest Rate…………………………….…………20

                iii.    Plaintiffs Haven't Alleged that the Debt was
                        Incurred in a Connection with the Buyer's
                        Business of Lending Money at a
                        Usurious Rate……………………………………20

C.      The Public Interest Militates Against Injunctive Relief…………...……20

CONCLUSION…………………………………………………………………….…...21

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Brownstone Funding Corp. v. Happy Travels Miami LLC*,
  2023 N.Y. Misc. LEXIS 3007, at *9 (Sup. Ct. 2023)……………………………......…….12

*Champion Auto Sales, LLC v. Pearl Beta Funding, LLC*,
  159 A.D.3d 507, 507 (1st Dep't 2018)……………………………………..…………….18

*Chase Manhattan Bank, N.A. v. Our Own Farm, Inc.*,
  237 A.D.2d 222, 223 (1st Dep't 1997)……………………………………………..…….12

*Collins v. Harrison-Bode*,
  303 F.3d 429, 433 (2d Cir. 2002)……………………………………………………..…..8

*Crawford v. Franklin Credit Mgmt. Corp.*,
  758 F.3d 473, 487 (2d Cir. 2014)…………………………………………………..……..16

*DeFalco v. Bernas*,
  244 F.3d 286, 306 (2d Cir. 2001)………………………………………………......…….16

*Donatelli v. Siskind*,
  170 A.D.2d 433, 434 (2d Dep't 1991)……………………………………………..…….18

*ExpertConnect, LLC v. Fowler*,
  2019 WL 13388548, at *1 (S.D.N.Y. Aug. 15, 2019)……………………………………8

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
  559 F.3d 110, 118 (2d Cir. 2009)……………………………………………..…….……10

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
  385 F.3d 159, 182 (2d Cir. 2004)…………………………………………......………….16

*Fossil Grp., Inc. v. Angel Seller LLC*,
  627 F. Supp. 3d 180, 199 (E.D.N.Y. 2022)……………………………………......…….16

*Giventer v. Arnow*,
  37 N.Y.2d 305, 309 (1975)………………………………………………......…………….18

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
  481 F.3d 60, 66 (2d Cir. 2007)………………………………………………......…….8, 10

*Hackshaw v. Urquiaga*,
  2016 WL 6534253, at *4 (S.D.N.Y. Nov. 2, 2016)…………………………………….…9

*Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*,
    2021 WL 535485, at *6 (S.D.N.Y. Feb. 12, 2021)…………………………….………10

*Intl. Nut Alliance, LLC v Bank Leumi USA*,
    2016 NY Slip Op 31848[U], at *11 (Sup. Ct. 2016)…………………………...……..12

*JFURTI, LLC v. Singal*,
    96 N.Y.S.3d 849 (1st Dep't 2019)…………………………………………...…………15

*Kelly, Grossman & Flanagan, LLP v. Quick Cash, Inc.*,
    2012 WL 1087341, at *6 (Sup. Ct. Suffolk Cty. Mar. 29, 2012)…………………..……18

*Manufacturers & Traders Tr. Co. v. Pro-Mation, Inc.*,
    115 A.D.2d 976 (4th Dep't 1985)……………………………………………………..12

*Metwally v. City of New York*,
    2022 WL 19766718, at *2 (S.D.N.Y. Dec. 16, 2022)……………………………….…8

*Patriarch Partners Agency Servs., LLC v. Zohar CDO 2003-I, Ltd.*,
    292 F. Supp. 3d 601, 603 (S.D.N.Y. 2017)………………………………….……..10

*Principis Cap., LLC v. I Do, Inc.*,
    201 A.D.3d 752 (2d Dep't 2022)………………………………………...…………18

*Related Companies, L.P. v. Ruthling*,
    2017 WL 6507759, at *18 (S.D.N.Y. Dec. 18, 2017)……………………..…………17

*Rubenstein v. Small*,
    273 A.D. 102, 104 (1st Dep't 1947)……………………………………………...…18

*S&M Indus., LLC v Advantage Platform Servs., Inc.*,
    2023 NY Slip Op 50905[U], at *5 (Sup. Ct. 2023)……………………...……..12

*Salinger v. Colting*,
    607 F.3d 68, 82 (2d Cir. 2010)…………………………………….……..…10

*Samson MCA LLC v. Joseph A. Russo M.D. P.C./IV Therapeutics PLLC*,
    2023 WL 5161995 (N.Y. App. Div. Aug. 11, 2023)………………..….………18, 19

*Schneiderman v. Actavis PLC*,
    787 F.3d 638, 650 (2d Cir. 2015)………………………………………………….8

*Seidel v. 18 E. 17th St. Owners*,
    79 N.Y.2d 735, 744 (1992)……………………………………………………18

*Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot.*,
    882 F.3d 52, 55 (2d Cir. 2018)……………………………………………………...…..9

*Streamlined Consultants, Inc. v. EBF Holdings LLC*,
    2022 WL 4368114, at *4 (S.D.N.Y. Sept. 20, 2022)……………………………….……18

*Tromp v. City of New York*,
    465 F. App'x 50, 51 (2d Cir. 2012)………………………………………...……..9

*Ujueta v. Euro-Quest Corp.*,
    29 A.D.3d 895, 895-96 (2d Dep't 2006)………………………………………...……18

*U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*,
    334 F. Supp. 3d 566, 567 (S.D.N.Y. 2018)……………………………………….……8

*U.S. Sec. & Futures Corp. v. Irvine*,
    2002 WL 34191506, at *4 (S.D.N.Y. May 13, 2002)……………………………………10

*Weisel v. Pischel*,
    197 F.R.D. 231, 241 (E.D.N.Y. 2000)………………………………………….……...18

*Worthy Lending LLC v. New Style Contractors, Inc.*,
    39 N.Y.3d 99, 101 (2022)………………………………………………………….13

*Zappin v. Collazo*,
    2020 WL 5646496, at *4 (S.D.N.Y. Sept. 22, 2020)……………………………...……9

*Zoo Holdings, LLC v. Clinton*,
    814 N.Y.S.2d 893 (Sup. Ct. 2006)…………………………………………………18

**Statutes**

18 U.S.C. § 1961…………………………………………………………………………17

18 U.S.C. § 1962……………………………………………………………………….7, 16

CPLR § 3215……………………………………………………...…...………………1, 7

N.Y. UCC Section 1-304………………………………………………………....…7, 15

N.Y. UCC Section 9-102………………………………………………………….…..7, 15

N.Y. UCC Section 9-406……………………………………………….…………2, 12, 13, 15, 20

N.Y. UCC Section 9-607…………………………………...……………….2, 7, 12, 15, 20

Defendants DYNASTY CAPITAL 26 LLC ("Buyer") and ACE RECOVERY GROUP LLC ("Ace" or "Collector") (collectively "Defendants") hereby submit this memorandum of law in opposition of the motion of Plaintiffs RUSH MASONRY INC. ("Seller") and RANDALL RUSH ("Guarantor" or "Mr. Rush") (collectively "Plaintiffs") for a preliminary injunction (the "Motion") and states as follows.

## PRELIMINARY STATEMENT

This case arises out of Plaintiffs' breaches of a Purchase and Sale of Future Receipts Agreement (the "Purchase Agreement") and accompanying personal guaranty. This isn't the only case, however, that has arisen from these same facts. In May 2024, Buyer sued Plaintiffs for these breaches in the action entitled *Dynasty Capital 26, LLC v. Rush Masonry Inc., et, al.*, Supreme Court of the State of New York, County of Monroe, Index No. E2024007533 (the "State Court Action"). After Buyer initiated the State Court Action, the parties entered into a CPLR 3215(i) Stipulation of Settlement (the "Stipulation of Settlement"). As part of the Stipulation of Settlement, Plaintiffs released Buyer and its agents from any all claims that could have been asserted in the State Court Action. Ultimately, Plaintiffs defaulted under the Stipulation and Buyer was granted a judgment against Plaintiffs pursuant to CPLR 3215(i).

Plaintiff has now brought this action asserting the very claims that it released Buyer and its agents (*e.g.*, Collector) from under the Stipulation of Settlement, claims that arise out of the exact same operative facts underlying the State Court Action in which Buyer has a judgment against Plaintiffs. Plaintiffs' claims in this action are barred by the doctrines of settlement and release and res judicata; they fail as a matter of law and can't provide grounds for Plaintiffs' requested injunctive relief. On that basis alone, Plaintiffs' motion should be denied.

Plaintiffs' motion should also be denied, however, because Plaintiffs have failed to meet the standard for a preliminary injunction.

As to irreparable harm – the sine qua non of injunctive relief – Plaintiffs provide no evidence other than a conclusory, three-page Affidavit from Mr. Rush, which is patently insufficient. Putting that aside, Mr. Rush's Affidavit states that, as a result of the alleged wrongful conduct at issue, Seller halted its business operations more than four months ago. (Rush Decl. at Doc. No. 10 at ¶ 11). Any alleged harm, therefore, has already occurred and there's no need for a preliminary injunction.

As to the second factor – the likelihood of success on the merits – Plaintiffs have no likelihood of success on the merits. They are essentially complaining of a situation that they created and agreed to in the contracts they signed with the funders/buyers named as defendants in this action. The gist of Plaintiffs' Complaint is that Defendants acted in a commercially unreasonable manner in serving UCC lien notices/account debtor notifications on Seller's account debtors after Merchant defaulted under the Purchase Agreement. This remedy, however, is expressly provided for in UCC Sections 9-406 and 9-607 and the Purchase Agreement. Moreover, New York courts have repeatedly held that, as a matter of law, that a secured party's serving UCC lien notices on account debtors is commercially reasonable. Plaintiffs suggest that Buyer and Collector colluded with the other defendants in this case – their competitors – to serve UCC lien notices/account debtor notifications on Seller on or around the same time. Not only didn't this happen, it makes no sense. Defendants wouldn't prejudice their right to recovery by potentially allowing other secured creditors to cut them in line nor would they benefit from shutting down Seller's Business operations because that would make it more difficult to collect the outstanding balance owed to Buyer  It is the fact that Seller entered into so many revenue based financing

agreements a/k/a merchant cash advance agreements and then defaulted on each one that caused multiple secured party buyers to exercise their rights under Article 9 of the UCC. Plaintiffs also suggest that Defendants somehow violated RICO's conspiracy provision even though Plaintiffs don't allege a RICO enterprise or a culpable RICO person. Plaintiffs' causes of action are utterly without merit and, for this additional reason, their motion should be denied.

Finally, the public interest militates against injunctive relief. Seller defaulted under its Purchase Agreement with Buyer and now seeks to prevent Buyer from exercising its statutory and contractual remedies to collect the receipts that Seller failed and refused to deliver. Injunctive relief under these circumstances would frustrate the public interest favoring enforcement of contracts and the right of secured parties to exercise statutory remedies under the UCC.

Pursuant to the foregoing – and as set forth more fully herein – Defendants respectfully submit that Plaintiffs' motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Purchase Agreement.

On February 7, 2024, Buyer and Seller entered into the Purchase Agreement pursuant to which Buyer purchased 26% (the "Specified Percentage") of Seller's total future receipts up to the sum of $412,225 (the "Purchased Amount") in exchange for a discounted upfront purchase price of $275,000 (the "Purchase Price"). (Declaration of Chanan Fuzailov ("Fuzailov Decl.") ¶ 5, Ex. A at p. 1).[1] Under the Purchase Agreement, Seller agreed to deliver the Purchased Amount to Buyer through a daily remittance of $5,889 (the "Periodic Amount"), which amount was an initial good faith estimate of the Specified Percentage of Seller's average daily receipts. (*Id*. ¶ 6, Ex. A

---

[1] The Declaration of Chanan Fuzailov is being contemporaneously filed herewith.

p. 1). The Periodic Amount was to be collected each business day and credited toward the Purchased Amount. (*See id*.)

The Periodic Amount wasn't a set figure but could be adjusted based on Seller's revenue. To that end, the Purchase Agreement included a mandatory reconciliation provision pursuant to which the Periodic Amount could be adjusted to more closely reflect the Specified Percentage of Seller's actual daily receipts. (*Id.* ¶ 8, Ex. A § 4). The Purchase Agreement specifically provides as follows:

> **Reconciliation and Adjusting the Periodic Amount (IMPORTANT PROTECTION FOR SELLER).** The initial Periodic Amount is intended to represent the Specified Percentage of [Seller's] Future Receipts. At any time, [Seller] or [Defendant] may request a reconciliation of [Seller's] actual revenue to adjust the Periodic Amount to more closely reflect the [Seller's] actual Future Receipts times the Specified Percentage.
>
> a.    **How [Seller] may Request a Reconciliation.** Call [Defendant] at (646)660-4511 or email admin@dynastycapitalllc.com
>
> b.    **How [Defendant] may Request a Reconciliation.** [Defendant] may request a reconciliation in writing via regular mail or e-mail.
>
> c.    **Reconciliation Information.** [Seller] shall provide [Defendant] with a copy of [Seller's] most recent month's official Account statement (the "Reconciliation Information"). Upon receipt of the Reconciliation information, [Defendant] shall promptly recalculate [Seller's] average revenue. If necessary to verify the Reconciliation Information, [Defendant] may request additional documentation including view-only access to the Account.
>
> d.    **Adjusting the Periodic Amount.** Within five (5) calendar days of [Seller's] reasonable verification of the Reconciliation Information, [Defendant] shall adjust the Periodic Amount on a going-forward basis to more closely reflect [Seller's] actual Receipts times the Specified Percentage. [Defendant] will notify [Seller] prior to any such adjustment. After each adjustment made pursuant to this paragraph, the new dollar amount will be deemed the updated Periodic Amount until any subsequent adjustment.

(*Id.*) (bold in the original). Buyer wasn't required to perform a reconciliation unless Seller made a written request and provided the necessary information. (*See id*.) Seller never made such a written request such that a reconciliation was never performed.  (*Id.* ¶ 8).

The Purchase Agreement included a Performance Guaranty of Performance (the "Guaranty") pursuant to which Guarantor agreed to irrevocably, absolutely and unconditionally guaranty the prompt performance of the guaranteed obligations of Seller including, without limitation, Seller's obligation not to revoke Buyer's authorization to debit the designated account or take any other action to interfere with Buyer's right to collect the purchased amount of receipts. (*Id.* ¶ 9, Ex. A § 18.a).

Additionally, under the Purchase Agreement, Seller granted Buyer a security interest in Seller's "accounts" or "payment intangibles" as those terms are defined in the New York Uniform Commercial Code (the "UCC") and authorized Buyer to file a UCC Financing Statement. (*Id.* ¶ 10, Ex. A §§ 14.a-b). Buyer perfected its security interest by filing a UCC-1 Financing Statement with the Louisiana Secretary of State on February 29, 2024. (*Id.*, Ex. B).  Seller expressly agreed that "with or without a breach of this Agreement, Buyer may notify account debtors… and may instruct them to make payment…to or for the benefit of Buyer."  (*Id.*. Ex. A § 14.a).

## II. Plaintiffs' Breach of the Purchase Agreement and Guaranty.

On February 8, 2024, Buyer funded the Purchase Price under the Purchase Agreement less applicable and disclosed upfront fees. (*Id.* ¶ 11).

After receiving the Purchase Price, Seller made remittances totaling $203,892, leaving an outstanding balance of $208,333 on the Purchased Amount of its receipts. (*Id.* ¶ 12, Ex. C).

On April 12, 2024, Seller breached Section 14.e. of the Purchase Agreement by revoking Buyer's ACH authorization to debit the Periodic Amount from Seller's designated account. (*Id.* ¶

13, Ex. D). Seller also breached the Purchase Agreement by failing to remit any portion of its receipts to Buyer after April 9, 2024 despite continuing to conduct business operations and generate revenue. (*Id*. ¶ 13). Guarantor then breached the Guarantee by failing to perform Seller's obligations to Buyer when Seller revoked Buyer's ACH authorization to debit the Periodic Amount and otherwise interfered with Buyer's right to collect the Periodic Amount. (*Id*. ¶ 14).

### III. The UCC Lien Notices.

On April 9, 2024, following Plaintiff's breach of the Purchase Agreement, Collector sent four UCC lien notices to vendors and/or potential vendors of Seller (the "Notices"). (Declaration of Daniel Davydov ("Davydov Decl.") ¶ 9, Ex. A).[2] The Notices provided Seller's vendors with notice (i) that Seller had defaulted under the Purchase Agreement; (ii) of the balance Seller owes to Buyer;[3] (iii) that Seller had given Buyer a security interest in Seller's accounts receivables; (iv) that vendors should make payments to Collector as an agent for Buyer; and (v) that the failure to make payments to Collector would constitute a violation of the UCC and interference with the Purchase Agreement. (*See id*., Ex. A). Collector didn't coordinate or communicate in any way with any of the other defendants in serving the Notices. (*Id*. ¶ 21). Collector has no relationship with Defendants Triton Recovery LLC or Lexington Recovery Group and wasn't aware that these collections agencies had served UCC lien notices on Seller's account debtors until Plaintiffs filed this action. (*Id*.) Collector hasn't received any payments from Seller's account debtors. (*Id*. ¶ 10).

---

[2] The Declaration of Daniel Davydov is being filed contemporaneously herewith.
[3] As set forth in the Declaration of Mr. Davydov, the balance in the Notices inadvertently failed to credit Seller with $41,233 in remittances. (*See* Davydov Decl. ¶¶ 12-13). The balance in the Notices, however, is still significantly less than the amount of the judgment that Buyer has against Plaintiff. (*See id*. ¶ 13).

### IV. The State Court Action.

On May 6, 2024, Buyer commenced the State Court action against Plaintiffs for breach of the Purchase Agreement and Guaranty. (*Id*. ¶ 15, Ex. C). That same day, the parties entered into the Stipulation of Settlement pursuant to which Plaintiffs agreed to settle the State Court Action in exchange for $250,000 to be paid to Buyer pursuant to a payment schedule. (*Id*. ¶ 16, Ex. D § 1). The Stipulation of Settlement provided that, in the event of a default that wasn't cured during the applicable cure period, Plaintiffs agreed that Buyer would be entitled to apply for a default judgment "pursuant to CPLR 3215(i) for the sum of $299,467.20 less payments made pursuant to [the Stipulation of Settlement], plus the sum of 25% of the amount due at the time of [default] for attorneys' fees, plus interest at the rate of 9% per annum from the date of default to the date of entry of judgment." (*Id*., Ex. D § 2). Finally, Plaintiffs released Buyer and its agents from any all claims that could have been asserted in the State Court Action. (*Id*., Ex. D § 4).

As of May 22, 2024, Plaintiffs defaulted under the Stipulation of Settlement by failing to remit the first payment and failing to cure their default within five days. (*Id*., Ex. E). On May 30, 2024, the Monroe County Clerk entered a judgment in favor of Buyer and against Plaintiffs in the amount of $379,404.07. (*Id*., Ex. F). Buyer subsequently filed a Partial Satisfaction of judgment in the amount of $41,233 to account for Seller's remittances that had inadvertently not been credited. (*Id*. ¶ 20, Ex. G). The outstanding balance on the judgment, therefore, is now $338,181.07. (*See id*.)

### V. Plaintiffs' Complaint.

On August 29, 2024, Plaintiffs filed a Summons and Complaint against Defendants for allegedly (i) violating NY UCC Section 9-607(c); (ii) violating NY UCC Section 1-304 and Section 9-102(a)(43); and (iii) violating 18 USC Section 1962(d). (*See* Doc No. 1, Compl.) The

gist of Plaintiff's Complaint is that Defendants acted in a commercially unreasonable manner and engaged in a RICO conspiracy by serving the Notices on Defendants' account debtors.  (*See id*.)

**VI. Plaintiffs' Motion for Preliminary Injunction.**

On September 9, 2024, Plaintiffs filed their Motion pursuant to Rule 65 of the Federal Rules of Civil Procedure seeking to have their account debtors pay the Court any amount owed to Seller during the pendency of the action and have the Court dispense the funds as it deems just and appropriate. (Doc. No. 7 at p. 1).  Defendants now respond in opposition.

## LEGAL STANDARD

"A preliminary injunction 'is one of the most drastic tools in the arsenal of judicial remedies,' and, as such, it is 'one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 334 F. Supp. 3d 566, 567 (S.D.N.Y. 2018) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). To succeed on their Motion, Plaintiff must establish (i) irreparable harm; (ii) a likelihood of success on the merits or, serious questions on the merits and a balance of hardships *decidedly* in favor of the moving party; and (iii) that a preliminary injunction is in the public interest. *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015); *ExpertConnect, LLC v. Fowler*, 2019 WL 13388548, at *1 (S.D.N.Y. Aug. 15, 2019) (emphasis added).

## LEGAL ARGUMENT

**I.  Plaintiffs are Barred from Bringing Their Claims Against Defendants.**

**A.  Plaintiffs Have Released all Claims Arising out of the Purchase Agreement.**

Settlement agreements and releases are construed according to the general principles of contract law. *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002); *Metwally v. City of New*

*York*, 2022 WL 19766718, at *2 (S.D.N.Y. Dec. 16, 2022). "Where the language of [a] release is clear, effect must be given to the intent of the parties as indicated by the language employed." *Tromp v. City of New York*, 465 F. App'x 50, 51 (2d Cir. 2012). "[W]hen general language is used in the releasing document, the release is to be construed most strongly against the releasor." (*Id.*). Claims which fall within the scope of a release are barred. *See Hackshaw v. Urquiaga*, 2016 WL 6534253, at *4 (S.D.N.Y. Nov. 2, 2016) (granting a motion to dismiss where all of the claims fell within the scope of the release signed by the plaintiff).

Here, in the Stipulation of Settlement, Plaintiff released Buyer and its agents from any and all claims "which may arise in the future from, or which are related in any manner to the…[Purchase Agreement]."  (Davydov Decl., Ex. D § 4).  Plaintiff's claims in this action, however, directly relate to the Purchase Agreement, specifically (i) Buyer's attempts to collect Seller's outstanding balance under the Purchase Agreement after Seller's default, and (ii) Buyer's exercise of its contractual right under the Purchase Agreement to direct Sellers' account debtors to pay Buyer until Seller's obligations were satisfied.  (*See* Doc. No. 1, Compl.)  Moreover, Plaintiffs' claims in this action were known to Plaintiffs at the time of the release because the claims arose from the Notices that were sent on April 9, 2024, approximately one month before the Stipulation of Settlement.  (*See* Davydov Decl., Exs. A, D).  Pursuant to the clear and unambiguous terms of the release, Plaintiffs' claims against Defendants in this action have been released and, respectfully, Plaintiffs' motion should be denied.

### B.  Plaintiffs' Claims are Barred by Res Judicata.

Res judicata bars re-litigation in a subsequent action if: (i) the previous action involved an adjudication on the merits; (ii) the previous action involved the plaintiffs in the subsequent action or those in privity with them; and (iii) the claims asserted in the subsequent action were, or ***could***

*have* been, raised in the prior action. *Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 55 (2d Cir. 2018); *Zappin v. Collazo*, 2020 WL 5646496, at *4 (S.D.N.Y. Sept. 22, 2020).

Here, each of the elements of res judicata is present.  First, the State Court Action involved an adjudication on the merits, the Judgment was entered on May 30, 2024. *See U.S. Sec. & Futures Corp. v. Irvine*, 2002 WL 34191506, at *4 (S.D.N.Y. May 13, 2002) ("A default judgment has the same preclusive effect for *res judicata* purposes as a judgment on the merits.").  Second, the State court action was between Plaintiffs and Buyer and involved the same agreements.  Finally, Plaintiffs claims in this action could have been raise in the State Court Action because both actions involve the same nucleus of operative facts.  Plaintiffs' claims in this action are barred by res judicata and, for this additional reason, Plaintiffs' motion should be denied.

## II. Plaintiffs Haven't Satisfied the Necessary Requirements to Obtain a Preliminary Injunction.

### A. Plaintiffs Haven't Established That They Will Suffer Irreparable Harm if the Preliminary Injunction is not Granted.

"A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). "To satisfy the irreparable harm requirement, [Plaintiffs] must demonstrate that absent a preliminary injunction they will suffer 'an injury that is neither remote nor speculative, but actual and imminent.'" *Grand River*, 481 F.3d at 66; *Patriarch Partners Agency Servs., LLC v. Zohar CDO 2003-I, Ltd.*, 292 F. Supp. 3d 601, 603 (S.D.N.Y. 2017). Furthermore, the Court shouldn't presume the irreparable harm alleged by Plaintiff, Plaintiff must prove actual "evidence that the irreparable harm will in fact occur." *Salinger v. Colting*, 607 F.3d 68, 82 (2d Cir. 2010); *Hodnett*

*v. Medalist Partners Opportunity Master Fund II-a, L.P.*, 2021 WL 535485, at *6 (S.D.N.Y. Feb. 12, 2021).

Here, Plaintiffs suggest that they will be irreparably harmed if the preliminary injunction isn't granted because they will be unable to complete projects, resulting in the loss of longstanding business relationships "with some or all of the account debtors" and the failure of its business. (Doc. No. 8 ¶ 15).  Initially, as noted, Plaintiffs' only proof of alleged irreparable harm is the conclusory, three-page Affidavit of Mr. Rush, which is insufficient to demonstrate irreparable harm.  Moreover, as also noted, Seller allegedly halted its business operations more than four months ago  (*Id.* ¶ 11).  Any alleged harm, therefore, has already occurred and there's no need for a preliminary injunction.  Putting aside the foregoing, any alleged harm that Plaintiffs vaguely suggest might occur in the future – *e.g.*, loss of business relationships – isn't actual and imminent, but remote and speculative and unsupported by any concrete evidence (such as written correspondence with any customers or vendors demonstrating strained business relations).

The only evidence that Plaintiff offer regarding "imminent" harm is two letters from account debtors that are from May 2024.  The letter from Broadmoor is dated May 10, 2024 and gave two days to cure the issues stated.  The other is from Norsouth dated May 8, 2024 and merely indicates that it does not owe anything to Seller but will begin to hold as payments come due because of competing lien notices.  (Complaint at Ex. 10).  Four months have gone by since those letters and Plaintiffs offer no explanation why the harm is now "imminent," especially in light of the fact that Mr. Rush admits that he shut his business operations down four months ago.

.  Plaintiffs have failed to satisfy the "most important prerequisite for the issuance of a preliminary injunction" and, respectfully, Plaintiff's motion should be denied.

**B. Plaintiffs Haven't Established a Likelihood of Success on Their Causes of Action and Haven't Raised Sufficiently Meritorious Questions.**

**1. Defendants Have no Likelihood of Success on Their First Cause of Action for Violation of N.Y. UCC Section 9-607(c)'s Commercially Reasonable Requirement**

The entire basis of Defendants' First Cause of Action is that Plaintiff failed to act in a commercially reasonable manner in sending the Notices to Seller's account debtors pursuant to Sections 9-406 and 9-607.

New York courts, however, have repeatedly rejected this argument and held, as a matter of law, that sending UCC lien notice is commercially reasonable. *See Chase Manhattan Bank, N.A. v. Our Own Farm, Inc.*, 237 A.D.2d 222, 223 (1st Dep't 1997) ("Plaintiff clearly acted in a commercially reasonable manner in directly seeking to collect payment from the borrower's account debtors"); *see also, e.g., Brownstone Funding Corp. v. Happy Travels Miami LLC*, 2023 N.Y. Misc. LEXIS 3007, at *9 (Sup. Ct. 2023) ("[W]ritten notice to an account debtor is a commercially reasonable action in the event of default under a security agreement"); *S&M Indus., LLC v Advantage Platform Servs., Inc.*, 2023 NY Slip Op 50905[U], at *5 (Sup. Ct. 2023) (finding that the defendant "acted in a commercially reasonable manner" in sending UCC lien notices to plaintiff's account debtors); *Intl. Nut Alliance, LLC v Bank Leumi USA*, 2016 NY Slip Op 31848[U], at *11 (Sup. Ct. 2016) (finding that a secured party's conduct in demanding payment from the plaintiff's account debtors was "commercially reasonable"); *Manufacturers & Traders Tr. Co. v. Pro-Mation, Inc.*, 115 A.D.2d 976 (4th Dep't 1985) ("Defendants' contention that plaintiff did not act in a commercially reasonable manner when it notified Pro-Mation's accounts receivable debtors and instructed them to remit their payments to the bank is without merit").

That's because sending UCC lien notices is expressly provided for in UCC Section 9-607(a)(1), which states that, "[i]f so agreed, and in any event after default, a secured party [] may

notify an account debtor or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party." In this case, it's also expressly provided for in the Purchase Agreement, which states that, "with or without a breach of this Agreement, Buyer may notify account debtors… and may instruct them to make payment…to or for the benefit of Buyer." (Fuzailov Aff., Ex. A § 14.a). Finally, it's expressly provided for in UCC Section 9-406(a), which provides that, "[a]fter receipt of the [required] notification, [an] account debtor may discharge its obligation by paying the assignee [e.g., the secured party] and may not discharge the obligation by paying the assignor [*e.g.*, the debtor]." *See also Worthy Lending LLC v. New Style Contractors, Inc.*, 39 N.Y.3d 99, 101 (2022) ("Under UCC 9–406, a security interest is an assignment and the UCC is purposefully structured to permit a debtor to grant creditors security interests in a debtor's receivables so that the secured creditor can direct account debtors to pay it directly"). Ace and Buyer acting in a manner that is authorized by both statute and the contracts entered into with Seller can't be commercially reasonable.

Plaintiffs claim that sending contemporaneous and competing UCC lien notices "demanding $1,566,961.39" wasn't commercially reasonable because it interrupted and halted Seller's business operations. (Doc. No. 1, Compl. ¶¶ 49, 51). First, Collector didn't send the Notices contemporaneously with the other secured parties and engaged in no communication or coordination whatsoever with the other defendants in this action. (Davydov Decl. ¶ 21). Collector sent the Notices on April 9, 2024, within two weeks of Plaintiffs' breach. (Davydov Decl. ¶ 9; Ex. A). Lexington and Triton, on the other hand, sent their UCC lien notices on May 3, 2024, almost a month after Collector sent its Notices. (*See* Complaint; Doc. No. 1 at Ex. 9). To be clear, Triton, Lexington Recovery and Ace Recovery are competitors, not parties in collusion. Each collection agency enforces its clients' rights as quickly and efficiently as possible without regard to what

other collection agencies are doing.  And, their goal is to enforce their clients contractual and statutory remedies, which Seller agreed to, not to interrupt Seller's business (although if a company enters into enough of these agreements, defaults on them all, and each buyer enforces its rights, it could cause business interruption, but that situation was caused by the seller's decisions, not the buyer's). Further, Plaintiffs' claim isn't supported by any legal authority. (*See id*.)  Instead, Plaintiffs proffer an inadmissible opinion from a third-party with no involvement in this case that it was foreseeable that account debtors would become confused and halt payments, resulting in the interruption of Seller's business, because there were multiple secured parties sending notices to account debtors. (Doc. No. 9 ¶ 17).  This speculative opinion testimony is entitled to no weight and is certainly not supported by the contracts between the parties or the provisions of the UCC that authorize sending these notices.

Moreover, if Plaintiffs didn't want multiple secured creditors to send UCC lien notices to their account debtor – which secured parties are entitled to do by law –  Plaintiffs shouldn't have entered into multiple purchase agreements, accepted and retained the purchase prices, and defaulted under each within a two-month time frame.  Upon information and belief, Plaintiffs entered into more revenue-based financing agreements than just the ones at issue in this case. The UCC doesn't require secured creditors to analyze the impact on the debtor or to communicate with other secured parties before enforcing their statutory rights. Because the UCC is a comprehensive set of laws, mere opinions won't rewrite the statutory authority to impose such requirements. If Plaintiffs and Mr. Henning believe that the UCC should require secured creditors to (i) independently analyze the impact that sending lien notice will have on debtors or, (ii) communicate with other secured creditors to ensure that sending lien notices won't negatively impact a debtor's business, they should direct their opinions to the Permanent Editorial Board for the UCC. This

Court isn't the proper authority to read requirements into the UCC that don't currently exist.  And, the standards that Plaintiffs and their "expert" are propounding are entirely unreasonable, impractical and will never end up in the UCC as it would essentially render UCC 9-607 and 9-406(a) useless.

Plaintiffs also seem to suggest that Defendants acted in a commercially unreasonable manner because Defendants' Notices prevented Seller from collecting $3,931,801.35 from its account debtors. (Doc. No. 1, Compl. ¶ 50). Defendants, however, sent Notices to four of Seller's account debtors explaining that Seller owed Buyer $290,778.50 and that the account debtor should direct payments to Collector ***until the amount of $290,778.50 has been remitted***. (*Id.* ¶ 4, Exs. A-D) (emphasis added). Thus, Defendants were very clear that the account debtors should continue making payments to Seller once Seller's obligation to Buyer had been satisfied. The account debtors' decision to halt all payments was made completely independent of Ace and Buyer and accordingly, Plaintiffs have no basis to hold Buyer or Ace liable for the effects of the same.

### 2.   Defendants Have no Likelihood of Success on Their Second Cause of Action for Violation of N.Y. UCC Article I Section 1-304 and Article 9 Section 9-102(a)(43)

Plaintiff seeks to hold Defendants liable for allegedly violating the obligation of good faith under UCC Section 1-304.  The UCC, however, states that "this section does not support an independent cause of action for failure to perform or enforce in good faith."  NY UCC § 1-304, cmt. 1; *see also JFURTI, LLC v. Singal*, 96 N.Y.S.3d 849 (1st Dep't 2019) (same).  Even if that weren't the case, Plaintiffs' "good faith" claim is simply that Defendants "failed to observe commercially reasonable standards of fair dealing" in sending the Notices.  (Doc. No. 1, Compl. ¶ 63).  That's the exact same as Plaintiff's First Cause of Action and it fails for the same reasons. In fact, this claim could be asserted against Plaintiffs because they took out multiple cash advances

in violation of the Agreements and, upon information and belief, essentially ended up making their own Ponzi scheme whereby purchase prices from new agreements are used to pay obligations owed on prior advances.  The thing about Ponzi schemes is that they eventually fall apart, as did Seller's business.  But, Mr. Rush was the one that chose to create that situation for his business, not Ace or Buyer.

### 3. Plaintiffs Have No Likelihood of Success on Their Third Cause of Action for RICO Conspiracy.

To establish a violation of § 1962(d) – RICO's conspiracy provision – Plaintiffs must show that Defendants agreed with at least one other entity to commit a substantive RICO offense. *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 487 (2d Cir. 2014).  To state a claim under § 1962(d), a plaintiff must allege a valid underlying claim under subsections (a), (b), or (c), plus an agreement to carry out such acts.  *See, e.g., First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004).  "To establish a violation of 18 U.S.C. § 1962(c) then, a plaintiff must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" or collection of unlawful debt.  *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001).[4]  A plaintiff must also "allege and prove the existence of two distinct entities: (1) a person; and (2) an enterprise that is not simply the same person referred to by a different name."  *Fossil Grp., Inc. v. Angel Seller LLC*, 627 F. Supp. 3d 180, 199 (E.D.N.Y. 2022) (internal quotation marks omitted).

### a. Plaintiffs Haven't Alleged the Existence of a RICO Enterprise or a RICO Persons

Plaintiffs haven't alleged two of the fundamental elements of a RICO claim: the existence of a RICO enterprise and a RICO person distinct from the enterprise.  Plaintiffs, therefore, can't

---

[4] Defendants cite to "18 U.S.C. § 1962(a)(b)(c) and (d)" but the specific allegations are for violation of Section 1962(c) through a pattern of racketeering activity or collection of unlawful debt.

establish an underlying RICO violation and their RICO conspiracy claim fails as a matter of law can can't provide grounds for injunctive relief.

### b. Plaintiffs Haven't Alleged a Pattern of Racketeering Activity.

A plaintiff alleging a pattern of racketeering must establish: (1) at least two predicate acts of racketeering occurring within a ten-year period; (2) that these predicate acts are related to each other; and (3) that these predicate acts amount to or pose a threat of continuing criminal activity. *Related Companies, L.P. v. Ruthling*, 2017 WL 6507759, at *18 (S.D.N.Y. Dec. 18, 2017). "Racketeering activity" is a defined term under Section 1961(1) of the RICO statute and includes an enumerated list of offenses. The alleged RICO offense underlying Plaintiff's RICO conspiracy claim (aside from collection of unlawful debt) – sending "contemporaneous and competing lien notifications" – isn't "racketeering activity" under the statute. And even if it was, Plaintiffs couldn't satisfy the continuity requirement (open-ended or closed-ended) because the alleged wrongful acts took place within the span of a few months and Plaintiffs haven't alleged any threat of continuing criminal conduct. *See Related*, 2017 WL 6507759, at *1. Plaintiffts can't demonstrate a RICO claim predicated on a pattern of racketeering activity.

### c. Plaintiffs Haven't Alleged Collection of Unlawful Debt.

Under RICO, an "unlawful debt" is:

> [A] debt…which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and [] which was incurred in connection with…the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

18 U.S.C. § 1961(6). Thus, to establish a RICO violation for collection of unlawful debt, a plaintiff must "show (1) that the debt was unenforceable under state or federal usury laws; (2) that the debt carried twice the enforceable interest rate; and (3) that the debt was incurred in connection with

the defendants' business of lending money at a usurious rate." *Weisel v. Pischel*, 197 F.R.D. 231, 241 (E.D.N.Y. 2000). Here, Plaintiffs haven't alleged any of these elements.

### i.   The Purchase Agreement Isn't a Loan Subject to Usury Laws.

As to the first element, Plaintiffs merely claim in conclusory fashion that the Purchase Agreement is, in fact, a usurious loan and not a bona fide purchase (a conclusory claim that is entitled to no weight).

It is axiomatic that a transaction can't be usurious if it's not a loan. *See, e.g.*, *Seidel v. 18 E. 17th St. Owners*, 79 N.Y.2d 735, 744 (1992). An agreement isn't a loan unless it provides (1) a right of interest on principal, *see Donatelli*, 170 A.D.2d at 434; *Kelly, Grossman & Flanagan, LLP v. Quick Cash, Inc.*, 2012 WL 1087341, at *6 (Sup. Ct. Suffolk Cty. Mar. 29, 2012) ("The concept of usury applies to loans, which are typically paid at a fixed or variable rate over a term.") and (2) an absolute right to repayment, *see, e.g.*, *Rubenstein v. Small*, 273 A.D. 102, 104 (1st Dep't 1947); *Zoo Holdings, LLC v. Clinton*, 814 N.Y.S.2d 893 (Sup. Ct. 2006). New York law includes a strong presumption against a finding of usury, and requires it to be supported by "clear and convincing evidence." *See Ujueta v. Euro-Quest Corp.*, 29 A.D.3d 895, 895-96 (2d Dep't 2006); *see also Giventer v. Arnow*, 37 N.Y.2d 305, 309 (1975).

The great weight of authority in New York – including Appellate Division decisions from the First, Second, and Fourth Departments – has held that revenue-based financing transactions aren't loans. *See Champion Auto Sales, LLC v. Pearl Beta Funding, LLC*, 159 A.D.3d 507 (1st Dep't 2018); *Principis Cap., LLC v. I Do, Inc.*, 201 A.D.3d 752, 754 (2d Dep't 2022); *Samson MCA LLC v. Joseph A. Russo M.D. P.C./IV Therapeutics PLLC*, 219 A.D.3d 1126 (4th Dep't 2023). These Appellate Division decisions are consistent with dozens of lower court and federal court rulings. *See Streamlined Consultants, Inc. v. EBF Holdings LLC*, 2022 WL 4368114, at *5

(S.D.N.Y. Sept. 20, 2022) ("[T]he Court joins an ever-growing group of courts that have held that nearly identical agreements...[are] not [] usurious loan[s]").

New York courts have developed a three-factor test to determine whether a merchant cash advance transaction should be considered a loan (as opposed to a purchase of future receivables). *Samson,* 219 A.D.3d at 1128. Under this test, courts evaluate: (1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy. *Id*.

Here, the Purchase Agreement satisfies all three factors. It has a mandatory reconciliation provision providing that, upon Seller's written request and its provision of certain necessary documents, the Periodic Amount shall be adjusted on a going-forward basis to more closely reflect that Specified Percentage of Seller's actual daily receipts. (Fuzailov Aff., Ex. A § 4). As a result of this mandatory reconciliation provision – pursuant to which the Periodic Amount is subject to regular adjustment based on Sellers' revenue – there is no fixed date by which Seller is required to remit the purchased amount of receipts and, thus, no finite term. Finally, the Purchase Agreement doesn't make Seller's filing for bankruptcy an event of default. (*See* Fuzailov Decl. § 5). To the contrary, the it states that "Buyer assumes the risk that ...the full Purchased Amount may never be remitted because [Seller's] business went bankrupt ...in the ordinary course of business." (*Id.* § 5). As such, Buyer had limited recourse in bankruptcy, the Purchase Agreement satisfies the three relevant factors, and the Purchase Agreement isn't a loan subject to usury laws. Defendants haven't (and can't) allege the first element of a RICO claim predicated on unlawful debt.

### ii. Plaintiffs Haven't Alleged that the Purchase Agreement Carries Twice the Enforceable Interest Rate.

While Plaintiffs' vaguely allude to "usurious interest rates," (Doc. No. 1, Compl. ¶ 5), they don't allege any "interest" rate associated with the Purchase Agreement, much less that any such rate is usurious under a specific state's statute. They certainly don't allege that the Purchase Agreement had an "interest" rate of more than twice the enforceable limit. In fact, the Agreements do not have interest rates because they are not loans. Plaintiffs, therefore, have failed to allege the second element of a RICO claim predicated on collection of unlawful debt.

### iii. Plaintiffs Haven't Alleged that the Debt was Incurred in Connection with the Buyer's Business of Lending Money at a Usurious Rate.

Finally, Defendants don't allege – much less present evidence – that their the debt was incurred in connection with Defendants' business of lending money at a usurious rate. Plaintiffs, therefore, have failed to allege the third element of a RICO claim predicated on collection of unlawful debt and they have no likelihood of success on their RICO claim.

### C. The Public Interest Militates Against Injunctive Relief

Plaintiffs suggest that the public interest will be served by granting the preliminary injunction because it "would make it clear that it is not commercially reasonable and compliant" to send purportedly contemporaneous and competing UCC lien notices. (*See* Doc. No. 1, Compl. ¶ 20). Defendants maintain that granting the preliminary injunction would be detrimental to the public interest. Granting the preliminary injunction would effectively impose additional requirements on secured parties seeking to enforce their contractual and statutory rights that aren't provided for in the UCC and that are completely unreasonable. Secured parties would now be forced to (i) independently analyze whether issuing account debtor notices pursuant to security agreements and UCC §§ 9-607 and/or 9-406(a) would negatively impact the debtor's business;

and (ii) determine if a debtor has entered into other agreements, determine if the debtor has defaulted under those agreements, and communicate with other secured parties to ensure UCC notices are sent in a manner that doesn't negatively impact the debtor's business.

To start, if the preliminary injunction is granted it would immediately become unduly burdensome for secured parties to enforce their rights. Secured parties would be forced to expend additional resources making sure that their enforcement procedures don't negatively impact the debtors business while the party that breached the agreement in the first place sits back and waits for the secured party to find a way to enforce its rights that won't open itself up to potential liability. This isn't a good result. Moreover, forcing secured creditors to communicate and determine amongst themselves how to send lien notices in a manner that enforces their rights while also ensuring that debtors' businesses aren't harmed would simply lead to increased litigation between secured creditors. Finally, Defendants urge this Court not to forget that Plaintiffs are in this situation because they entered into multiple purchase agreements with multiple companies and defaulted on each agreement within the span of two-months. The public interest would decidedly not be served by allowing Plaintiffs to escape the consequences of their own actions by being allowed to accept and retain the benefits of the revenue based financing agreements, defaulting on their remittance obligations, and then preventing the buyers from enforcing their agreed upon rights on account of the default. For the foregoing reasons, Plaintiffs haven't met the third element of obtaining a preliminary injunction either.

## **CONCLUSION**

Pursuant to the foregoing, Plaintiff respectfully submits that the Court should deny Plaintiffs' motion for a preliminary injunction.

Dated: September 17, 2024.                    Respectfully Submitted,


                                              */s Steven W. Wells*
                                              WELLS LAW P.C.
                                              Steven W. Wells
                                              Will Parsons
                                              229 Warner Road
                                              Lancaster, New York 14086
                                              (716) 983-4750
                                              Email: steve@wellspc.com
                                              Email: will@wellspc.com
                                              *Counsel for Defendants*
                                              *Dynasty Capital 26 LLC and*
                                              *Ace Recovery Group LLC*